UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Terese M. Sovis,                                             Civil No. 11-2253 (DWF/LIB)

          Plaintiff,

v.                                                                    **MEMORANDUM**
                                                                      **OPINION AND ORDER**
The Bank of New York Mellon, f/k/a
The Bank of New York, as Trustee;
Saxon Mortgage Services, Inc.;
NovaStar Mortgage, Inc.; and
NovaStar Mortgage Funding
Trust, Series 2006-3,

          Defendants.

_____

Daniel M. Eaton, Esq., Christensen Law Office PLLC, counsel for Plaintiff.

Hilary J. Loynes, Esq., Darryl C. Thomas, II, Esq., and Michael J. Steinlage, Esq., Larson King, LLP, counsel for Defendants.

_____

# INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 10). For the reasons set forth below, the Court grants Defendants' motion.

# BACKGROUND

On May 17, 2006, Plaintiff executed a $227,000 mortgage in favor of PrimeSource Funding ("PrimeSource") that secured a lien for residential property on Walnut Lane Northeast in Miltona, Minnesota ("Subject Property"). (Doc. No. 4, Ex. H, Am. Verified Compl. ("Am. Compl.") ¶¶ 3 & 10, Ex. B.) On the same date, PrimeSource

assigned the mortgage to NovaStar Mortgage, Inc. ("NovaStar"). (*Id.* ¶ 13, Ex. C.) The assignment was recorded on August 24, 2006. (*Id.*) On June 1, 2006, NovaStar assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee, and the assignment was recorded on October 19, 2007. (*Id.* ¶ 13, Ex. D.) Then, on January 8, 2009, MERS assigned its interest in the mortgage to the Bank of New York Mellon, as Successor Trustee under NovaStar Mortgage Funding Trust, Series 2006-3 ("New York Mellon"), an assignment which was recorded on January 23, 2009. (*Id.* ¶ 13, Ex. E.) Thereafter, New York Mellon commenced foreclosure by advertisement proceedings and ultimately purchased the Subject Property at a sheriff's sale on October 9, 2009. (*Id.* ¶ 33.) Plaintiff alleges that she was unaware that the sheriff's sale had occurred. (*Id.* ¶ 34.)

In June 2008, Plaintiff contacted Saxon Mortgage Services, Inc. ("Saxon") as servicer of the mortgage to inquire about a loan modification. (*Id.* ¶ 18.) After Plaintiff submitted modification paperwork on or about August 26, 2008, a Saxon supervisor "represented that the modification paperwork had been lost and [that] Sovis must re-submit the paperwork." (*Id.* ¶¶ 21-23.) Plaintiff sent a second set of modification paperwork to Saxon on or about October 13, 2008, which Saxon, once again, claimed to have lost. (*Id.* ¶¶ 24-25.) Plaintiff sent a third set of paperwork to Saxon on December 26, 2008, which Saxon claimed not to have. (*Id.* ¶¶ 26, 28.) On or about December 27, 2008, Plaintiff received a letter from Saxon, which stated that "Saxon was initiating the foreclosure process." (*Id.* ¶ 27.) On or about July 13, 2009, Plaintiff sent Saxon a fourth set of modification paperwork. (*Id.* ¶ 28.) Plaintiff claims that, later in

2009, Saxon notified Plaintiff that "she was approved for a temporary loan modification" pursuant to which Plaintiff would make payments of $1,400 per month; after three such payments, Saxon would permanently modify the loan. (*Id.* ¶ 29.) Plaintiff further alleges that "Saxon also represented [to Plaintiff] that the foreclosure of her Home was on hold because of the modification." (*Id.* ¶ 30.) Plaintiff further claims that she submitted the first $1,400 payment pursuant to the terms of the trial modification, but that Saxon rejected the payment. (*Id.* ¶¶ 31-32.)

Then, on June 14, 2010, eight months after the sheriff's sale and two months after the expiration of the redemption period, Saxon sent Plaintiff a letter requesting documents in order to consider her for a loan modification. (*Id.* ¶ 36, Ex. F.) Plaintiff sent Saxon a fifth set of loan modification paperwork on or about June 18, 2010. (*Id.* ¶ 37.) On May 24, 2011, Saxon informed Plaintiff that it had recalculated her interest rate and monthly payment and that her new rate would be effective June 1, 2011. (*Id.* ¶ 39, Ex. G.)

On July 21, 2011, Plaintiff initiated the present action by filing a Verified Complaint in state court. (Doc. No. 1, Ex. C, Verified Compl.) On August 5, 2011, Plaintiff amended her complaint. (*See generally* Am. Compl.) Defendants removed the case to federal court. (Doc. Nos. 1, 4.) In the Amended Verified Complaint, Plaintiff asserts nine causes of action: three counts of breach of contract; two counts of negligent misrepresentation; slander of title; two counts seeking declaratory relief based on the assignment of mortgage; and equitable estoppel. (*See generally* Am. Compl.) Defendants now move to dismiss all of Plaintiff's claims.

3

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**II.    Defendants' Motion to Dismiss**

   **A.    HAMP Related Claims (Counts I-IV)**

Defendants argue that Counts I through IV of Plaintiff's Amended Complaint are predicated on an alleged duty to consider Plaintiff's Home Affordable Modification Program ("HAMP") loan modification application before proceeding with the foreclosure sale, and that these claims should be dismissed because there is no private right of action under HAMP.  Plaintiff does not dispute that there is no private right of action under HAMP, but maintains that her claims are not barred simply because they relate to a request for a HAMP loan modification.

HAMP provides financial incentives to encourage mortgage servicers to modify the terms of eligible loans.  *See, e.g.*, *Williams v. Geithner*, Civil No. 09-1959, 2009 WL 3757380, at *2 (D. Minn. Nov. 9, 2009); *Marks v. Bank of Am.*, No. 3:10-cv-8039, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010).  Servicers are not required to participate, but HAMP imposes certain obligations on those that do participate.  *Williams*, 2009 WL 3757380 at *2-3.  The substantial weight of authority supports the conclusion that HAMP does not provide a private right of action.  *See, e.g.*, *Dugger v. Bank of Am.*, 2010 WL 3258383, at *2 (E.D. Mo. August 16, 2010) ("[N]either EESA, TARP, nor HAMP provides a private right of action to individual borrowers."); *Cox v. Mortg. Elec. Registration Sys.*, Civil No. 10-4626, 2011 WL 2600700, at *3 (D. Minn. June 30, 2011) ("There is no private right of action under HAMP.").

Although Plaintiff does not directly state any claims under HAMP in her Amended Complaint, Counts I through IV derive from Plaintiff's requests and applications for a

HAMP loan modification. In particular, at the heart of Plaintiff's claims is the assertion that Defendants were somehow obligated "to accept modified payments" pursuant to an allegedly agreed upon loan modification. (*See, e.g.*, Am. Compl. ¶ 50.) Because there is no private right of action under HAMP, Plaintiff's claims fail and are appropriately dismissed.[1] *See, e.g., Burke v. Bank of Am., N.A.*, Civ. No. 11-2344 (DWF/JSM). Even if Plaintiffs' claims did not fail for this reason, they would fail for the reasons discussed below.

### 1. Breach of Contract Claims (Counts I-III)

Plaintiff argues that Defendants' alleged conduct (presumably through their dealings with Plaintiff related to loan modification) has somehow breached the terms of the original mortgage and promissory note. Defendants argue that Plaintiff's breach of contract claims fail because any assertions that Plaintiff was entitled to make reduced payments (pursuant to HAMP or otherwise) are contrary to the terms of the mortgage and promissory note, are not in writing, and are thus barred by the Minnesota Credit Agreement Statute. It is clear to the Court that the conduct at issue pertains—not to the underlying mortgage and contractual agreement—but rather to the oral negotiations for loan modification.

---

[1] Plaintiff argues that HAMP does not preempt state law. This argument is irrelevant, as Defendants do not argue that HAMP preempts otherwise actionable claims under state law, and the Court concludes that Plaintiff's asserted claims are merely attempts to enforce HAMP by characterizing them as state-law claims.

The Statute of Frauds provision in Minnesota's Credit Agreement Statute bars the enforcement of "credit agreements" that are not in writing and signed by both the creditor and debtor. *See* Minn. Stat. § 513.33, subd. 2 ("A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."); *see also Grueling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761-62 (Minn. Ct. App. 2005) (explaining that "claims on agreements falling under section 513.33 fail as a matter of law if the agreement is not in writing"). In essence, Plaintiff here is seeking to enforce an alleged oral promise for modification or an oral promise to stay foreclosure. A loan modification constitutes a credit agreement. *See, e.g.*, *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1108-09 (D. Minn. 2011).[2] Therefore, to be enforceable, the modification must be in writing and signed by the creditor and the debtor. There is no dispute that there is no such signed writing here. Accordingly, any such oral promise is not legally enforceable under Minnesota law. *See, e.g.*, *Ming'ate v. Bank of Am., N.A.*,

---

[2]  In addition, Minnesota Statute section 513.33, subdivision 3, provides:
(a) The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subdivision 2:
(1) the rendering of financial advice by a creditor to a debtor;
(2) the consultation by a creditor with a debtor; or
(3) *the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements*.
Minn. Stat. § 513.33, subd. 3 (emphasis added).

7

Civ. No. 11-1787, 2011 WL 4590431, at *4 (D. Minn. Sept. 30, 2011) (explaining that the Minnesota Statute of Frauds (specifically Minn. Stat. § 513.33) "provides that implied-in-fact oral promises to modify loans fail as a matter of law").[3]

### 2. Negligent Misrepresentation (Count IV)

In Counts IV and V of the Amended Complaint, Plaintiff alleges causes of action for negligent misrepresentation. Under Minnesota law, a person makes a negligent misrepresentation when:

> (1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009).

"Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010). Accordingly, the heightened pleading requirements of

---

[3] While the parties fail to address the issue in their briefs, the Court concludes that, for the same reasons, Plaintiff's equitable estoppel claim (Count IX) is rightfully dismissed. Plaintiff alleges that New York Mellon and Saxon induced her to rely on their representation that they would reinstate her mortgage after the sheriff's sale. (Am. Compl. ¶¶ 103-04.) Because Plaintiff, again, appears to seek enforcement of an alleged oral promise for modification or to stay foreclosure, the claim is barred by Minn. Stat. § 513.33. *See, e.g., Burke*, Civ. No. 11-2344 (DWF/JSM).

Rule 9(b) of the Federal Rules of Civil Procedure are applicable to claims of both fraud and negligent misrepresentation.

Count IV of the Amended Complaint stems from the following alleged misrepresentations: that Saxon would competently and timely review Plaintiff's loan modification paperwork; that Saxon would accept payments from Plaintiff pursuant to the trial modification; and that Saxon would not proceed with the sheriff's sale. (Am. Compl. ¶ 72.) Plaintiff's allegations lack the particularity required under Rule 9(b). There are no facts alleged that indicate who made the purported representations, what specifically was said, or when the representations were made. In addition, Plaintiff has failed to sufficiently allege facts to show justifiable reliance or that Defendants' alleged failure to follow through on their alleged promises was the proximate cause of foreclosure or other damages to Plaintiff. Plaintiff's conclusory and bare allegations simply do not support Plaintiff's claim of negligent misrepresentation. Therefore, the Court dismisses Count IV of Plaintiff's Amended Complaint without prejudice.[4] Because Count V pertains to the validity of the assignment of mortgage, the Court dismisses Count V with prejudice for the reasons discussed below.

---

[4] Because it is conceivable that Plaintiff could allege a claim of negligent misrepresentation against Saxon with the particularity required by Rule 9(b) with respect to specific representations regarding postponement of the sheriff's sale, the Court dismisses the claim without prejudice. The Court notes, however, that the Amended Complaint is substantially lacking in its current form.

### B. Assignment Related Claims (Counts V-VIII)

Plaintiff's claims related to the assignments of mortgage must be dismissed for lack of standing. To have standing under Article III of the Constitution, a plaintiff must allege (1) a concrete injury in fact, (2) that is fairly traceable to the challenged action, and (3) that is likely to be redressed by the relief sought. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of," and it must be likely "that the injury will be redressed by a favorable decision."). The Court finds that Plaintiff cannot furnish the causal nexus necessary to establish standing to assert her claims.

In Counts V through VIII, Plaintiff generally alleges that Defendants have unlawfully foreclosed on her home pursuant to a series of invalid assignments of mortgage. Plaintiff, however, does not allege any facts to demonstrate that she has suffered an injury in fact as a result of the purported unlawful transfers. The Court concludes that the mortgage assignments, standing alone, caused Plaintiff no injury.

Plaintiff was not a party to the final assignment of mortgage, which conferred upon New York Mellon the right to foreclose on the debt. Even assuming Plaintiff were able to show that NovaStar or MERS had no authority to assign their interests in the mortgage, the party sustaining injury as a result of the improper assignment would be NovaStar or MERS, not Plaintiff.[5] If the assignments of mortgage were indeed

---

5   Notably, neither NovaStar nor MERS has raised an objection to the assignments at issue.

unenforceable, either NovaStar or MERS would retain the right to foreclose. Thus, any injury to Plaintiff in losing her home pursuant to a foreclosure sale is not fairly traceable to any of the disputed assignments of mortgage and is not likely to be redressed by the relief sought.

Plaintiff has not demonstrated a causal nexus between the mortgage assignments and any economic harm she suffered. With respect to her claim of negligent misrepresentation (Count V), Plaintiff has failed to articulate how she relied, in any way, upon the assignment of mortgage from NovaStar to MERS, the document she presumably contends falsely represents that NovaStar "may assign" the mortgage. (Am. Compl. ¶ 79.) Nor has she alleged that any assignment of mortgage at issue induced her to act in reliance upon it. *See Iverson v. Johnson Gas Appliance Co.,* 172 F.3d 524, 529 (8th Cir. 1999). Plaintiff cannot show the essential element of reliance or that she sustained an injury as a result of any such "false statement." Thus, Counts V and VI of Plaintiff's Amended Complaint fail for want of a causal nexus between Defendants' conduct and Plaintiff's alleged injuries.[6] *See Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 926–27 (8th Cir. 2004). Because Plaintiff's other assignment related claims (Counts VII-VIII)

---

[6] Plaintiff's failure to allege specific facts with respect to her claims further evidences a lack of standing. Notably, New York Mellon now holds a sheriff's certificate of sale for the Subject Property, which was recorded on October 9, 2009. (Doc. No. 14, Thomas Decl. ¶ 2, Ex. A.) The sheriff's certificate of sale constitutes prima facie evidence that the foreclosure was lawful. *Dixon v. Deutsche Bank Nat'l Trust Co.*, 2008 WL 4151835 (D. Minn. Sept. 3, 2008); *see* Minn. Stat. § 580.19.

rely on the same conduct as her claims of negligent misrepresentation (Count V) and slander of title (Count VI), those claims likewise fail.

Plaintiff is without standing to pursue her causes of action pertaining to the assignments of mortgage. With respect to her claim of negligent misrepresentation (Count V), she cannot demonstrate a causal nexus between the purported false statements and the financial harm she may have suffered as a result of the foreclosure. Because Counts V through VIII all turn on the validity of the assignments of mortgage, which this Court has determined Plaintiff has no standing to challenge, those claims fail for lack of standing. Accordingly, the Court dismisses Counts V through VIII of Plaintiff's Amended Complaint with prejudice.

Although the Court has concluded that Plaintiff's claims are all properly dismissed, the Court does not condone Defendants' management of Plaintiff's applications for loan modification. Assuming Plaintiff's allegations are true, Defendants can fairly be criticized for a lack of professionalism, excessive disorganization, as well as a cavalier attitude while stringing Plaintiff along in the modification process. Even so, Defendants' actions, as alleged, do not rise to the level of actionable conduct.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.  Defendants' Motion to Dismiss (Doc. No. [10]) is **GRANTED**.

2.  Counts I-III and Counts V-IX of Plaintiff's Amended Verified Complaint (Doc. No. [4], Ex. H) are **DISMISSED WITH PREJUDICE**.

     3.    Count IV of Plaintiff's Amended Verified Complaint (Doc. No. [4], Ex. H) is **DISMISSED WITHOUT PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 6, 2012                       s/Donovan W. Frank  
                                                     DONOVAN W. FRANK  
                                                     United States District Judge